IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:25-cv-02439-CNS-STV

FLEXPAK, LLC,

      Plaintiff,

v.

PHILIP SCHARRER,
JULIE GROTLUSCHEN, and
ALTITUDE PACKAGING, LLC,

      Defendants.

---

**ORDER**

---

Before the Court is Plaintiff Flexpak, LLC's (Flexpak's) fully briefed and supplemented Motion for Preliminary Injunction. *See, e.g.,* ECF No. 14. For the following reasons, it's DENIED.

## I.    BACKGROUND

This case's background is drawn from witness testimony, exhibits presented during the January 23, 2026, preliminary injunction hearing, the parties' evidentiary submissions attendant to their preliminary injunction briefing, and unofficial hearing transcripts. *See, e.g., Dole v. Greene*, No. 1:21–cv–03047–CNS–GPG, 2022 WL 5192890, at *1 n.1, n.4 (D. Colo. Oct. 5, 2022); *Denver Homeless Out Loud v. Denver, Colorado*, 514 F. Supp.

1

3d 1278, 1284 n.5 (D. Colo. 2021), *vacated and remanded on other grounds*, 32 F.4th 1259 (10th Cir. 2022).

A brief summary of this case's factual background, with which the Court presumes familiarity, suffices. Flexpak is a company that provides packing solutions for its customers. *See, e.g.,* ECF No. 14 at 5. In February 2023, it acquired Preferred Packaging Products, Inc. (Preferred Packaging). *See, e.g., id.* At Preferred Packaging, Defendant Scharrer signed an "Affiliate Agreement," which contained a "covenant to retain confidences." *See, e.g.,* JX012 (capitalization omitted).[1] Defendants Scharrer and Grotluschen were longtime Preferred Packaging employees who then came to work for Flexpak as salespeople.

In April 2025, Defendants Scharrer and Grotluschen left Flexpak to start their own company, Altitude Packaging, LLC (Altitude). Flexpak then sent Defendants a series of cease-and-desist letters, *see, e.g.,* JX049, contending, among other things, that Defendants Scharrer and Grotluschen had breached their Affiliate Agreements by taking Flexpak trade secrets upon leaving Flexpak to start Altitude. This lawsuit followed.

## II.    LEGAL STANDARD

A movant must satisfy four factors to secure a preliminary injunction, including that the movant will suffer "irreparable harm" without preliminary relief. *See, e.g., Mahmoud v. Taylor*, 606 U.S. 522, 546 (2025). "An injunction can issue only if each factor is

---

[1] There appears to be a factual dispute as to whether Defendant Grotluschen actually signed her Preferred Packaging Affiliate Agreement. For instance, Flexpak Chief Executive Officer Brian Kellen testified that Defendant Grotluschen's "cover letter" showed it was "checked off" that she signed Preferred Packaging Affiliate Agreement. And Defendant Grotluschen testified that she never signed such an Affiliate Agreement. *See also* JX049. Regardless, as explained further below, the Court need not resolve this apparent factual dispute in order to conclude that preliminary injunctive relief is unwarranted.

established." *Denver Homeless Out Loud v. Denver, Colorado*, 32 F.4th 1259, 1277 (10th Cir. 2022) (citation modified).

## III.     ANALYSIS

Explained further below, because Flexpak hasn't carried its *irreparable harm* burden, it hasn't established entitlement to preliminary injunctive relief. *See, e.g., id; First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1143 (10th Cir. 2017) ("Without showing irreparable harm, [a movant] cannot obtain a preliminary injunction." (citation modified)).

"Demonstrating irreparable harm is not an easy burden to fulfill." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (citation modified). To do so, a movant "must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Id.* (citation modified); *see also Port City Props. v. Union Pac. R. Co.*, 518 F.3d 1186, 1190 (10th Cir. 2008) ("Economic loss usually does not, in and of itself, constitute irreparable harm." (citation modified)).

In both its preliminary injunction motion and supplement, Flexpak argues that because Defendants have "harmed Flexpak by using its trade secrets to form a competing business and lure away customers" in violation of the Affiliate Agreements, ECF No. 14 at 17, that Flexpak has and will continue to suffer irreparable harm. *See also* ECF No. 66 at 28 (explaining irreparable harm if Defendants "are permitted to continue misusing Flexpak's confidential information to convert Flexpak's customers"). But Flexpak has

offered no evidence showing that it faces *irreparable harm* considering Defendants'
purported conduct.[2]

    *First*, simply because "trade secrets" are involved does not automatically establish
Flexpak has been, or will be, irreparably harmed absent preliminary injunctive relief.
*Compare* ECF No. 14 at 17; *and* ECF No. 66 at 27, *with DTC Energy*, 912 F.3d at 1271
("But not all plaintiffs who have already suffered lost customers, stolen trade secrets, or
intangible injury can show a sufficient probability of future irreparable harm to warrant a
preliminary injunction.").

    *Second*, and similarly, that Defendants have formed a "competing business" and
taken on former Flexpak customers does not mean Flexpak has suffered irreparable
harm. *Compare* ECF No. 14 at 17, *with DTC Energy*, 912 F.3d at 1271. Indeed, testimony
and evidence from the preliminary injunction hearing actually *undercuts* this argument
and Flexpak's contention it has suffered irreparable harm. For instance, and contrary to
Flexpak's argument in its supplement that absent preliminary relief its "competitive
advantage" will be "irreparably damaged," Flexpak's Chief Financial Officer Jamie Howe
testified that he did not think Defendants' of taking Flexpak's customers had harmed
Flexpak's reputation in the industry. *Cf. Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1267 (10th
Cir. 2005) (affirming district court's determination that plaintiff failed to show irreparable

---

[2] Because the Court need only address whether Flexpak has met its *irreparable harm* burden, it need not—
and does not—address the likelihood of success on the merits of Flexpak's claims, or the two remaining
preliminary injunction factors. *Cf. Denver Homeless*, 32 F.4th at 1277; *Griffith v. El Paso Cnty., Colorado*,
129 F.4th 790, 813 (10th Cir. 2025) ("If it is not necessary to decide more, it is necessary not to decide
more." (citation modified)). Yet even assuming—again, without deciding—that Flexpak has carried its
*likelihood of success* burden, Flexpak fails to carry its *irreparable harm* burden.

harm where he "made no attempt to apprise [the] court of any evidence in the record showing *actual or significant* risk of loss of prestige, academic reputation or professional opportunities that cannot be remedied by money damages" (citation modified)). Mr. Howe's testimony that Flexpak has *not* suffered reputational harm from Defendants' conduct undercuts its argument that it has suffered *irreparable* harm from that same conduct. *See Keybank Nat'l Ass'n v. Williams*, No. 20-1384, 2022 WL 402379, at *4 (10th Cir. Feb. 10, 2022) (affirming district court's irreparable harm conclusion where court "found no evidence that [defendants] [were] using [plaintiff's] confidential information to solicit its customers and divert business [or] that [plaintiff] *has suffered or will suffer lost goodwill or competitive standing*" (citation modified)).

    *Third*, and most fundamentally, Flexpak's injuries can be quantified and subsequently cured by money damages. *Cf. Spice Merchants Entities Corp. v. Pretty Colorado, LLC*, No. 24–cv–00371–RMR–NRN, 2024 WL 4277917, at *5–6 (D. Colo. Sept. 24, 2024) ("[O]ne only gets a preliminary injunction when an award of money after the fact *cannot* cure the injury." (citation modified)). Hearing testimony demonstrates that the nature of Flexpak's injuries are commercial, economic, and quantifiable. For instance, Brian Kellen, Flexpak's Chief Executive Officer, testified that due to Defendants' conduct Flexpak had lost approximately twenty to thirty accounts of the over approximately 4,000 accounts Flexpak maintains. This is consistent with Mr. Howe's testimony, in which Mr. Howe estimated that Flexpak lost between twenty to forty customers within a "short period of time." Loss of customers, and those customers' business, are paradigmatic economic injuries that fail to show irreparable harm—particularly where Flexpak's own Chief

Financial Officer testified that Defendants' competing business hasn't harmed Flexpak's industry reputation. This conclusion is underscored by Mr. Kellen's own deposition testimony, in which he stated that he attributed "hundreds of thousands of dollars" of Flexpak revenue decline to Defendants' purported trade secret misappropriation. ECF No. 67-5 at 8. And as Defendants argue, ECF No. 36 at 19, Flexpak's initial disclosures "further suggest that some damages . . . can be calculated," *DTC Energy*, 912 F.3d at 1272 (citation modified), underscoring that Flexpak's harm is not irreparable. *See also* ECF No. 36-4 at 4 ("Plaintiff's damages will be calculated based on lost revenue and profit, including future earnings and business value that was lost as a result of Defendants' breaches . . . .").[3]

To be sure, Mr. Howe testified that any businesses losses are just "estimates," and that Flexpak does not know the precise percentage of the "business" it has lost in some situations. But this does not mean Flexpak's losses cannot be *ultimately* quantified, particularly where the *amount* of business that Flexpak has lost is *economic* harm, and an award of money damages could make Flexpak whole for the loss of that business. *See, e.g., Port City*, 518 F.3d at 1190 ("Economic loss usually does not, in and of itself, constitute irreparable harm." (citation modified)); *Keybank*, 2022 WL 402379, at *4 ("The insistence that [defendants'] past conduct and continued possession of the [reports] necessarily cost it future business and goodwill that cannot be measured is insufficient to establish the requisite irreparable harm."); *First Western*, 874 F.3d at 1144. In this way

---

[3] Moreover, in arguing it is likely to succeed on the merits of its trade secret claims, Flexpak represents that "Defendants' actions have injured Flexpak, as Defendants have used the information to take Flexpak's customers *and business*, causing *negative financial impact* and lost customer and *business* relationships." ECF No. 66 at 23 (emphases added).

Mr. Howe's testimony does little to help Flexpak meet its *irreparable harm* burden. And in direct contradiction to it, as noted above Mr. Kellen provided testimony in his deposition indicating that Flexpak's damages *could* be quantified, underscoring not only that Flexpak's harm is not irreparable, but moreover that an award of money could cure its injury. *See, e.g., Spice Merchants*, 2024 WL 4277917, at *5; *First Western*, 874 F.3d at 1144.

* * *

The Court makes one last observation. It denies Flexpak's motion because it has not met its *irreparable harm* burden. *See, e.g., First Western*, 874 F.3d at 1143. And the Court, as indicated above, reaches no conclusion as to whether Flexpak has met its *likelihood of success on the merits* burdens.

But notably Mr. Howe testified that Flexpak does not contend that Defendants are subject to non-competition or non-solicitation agreements. Nor could he, as the Affiliate Agreement's confidentiality provision does *not* contain a competition or solicitation restriction. And so, to the extent any Flexpak argument at this stage, or any stage moving forward, relies on the notion that Defendants have improperly *competed* against Flexpak in contravention of the Affiliate Agreement, such argument is ill-taken. *Compare* ECF No. 66 at 20 ("Defendants have used this information, which they learned through their employment with Flexpak, to jumpstart Altitude and *divert business away* from Flexpak." (emphasis added)), *with* ECF No. 78 at 11 (arguing the "[c]ovenant . . . prohibits Defendants from using or disclosing Flexpak's confidential information, not from competing with Flexpak in a lawful manner"). Thus, Mr. Kellen's express desire that this

7

Court order Defendants not to compete, offered at the end of his cross-examination, is misguided.

Finally, in his testimony Mr. Kellen expressed dismay that he "didn't see [it] coming" that Defendants Scharrer and Grotluschen were leaving Flexpak. They were under no obligation to notify him of the same. Nor were they under any obligation to discuss their "future plans" with Mr. Kellen or anyone else at Flexpak. Any contrary suggestion or argument from Mr. Kellen or Flexpak is wrong—then, now, and in the future. The Affiliate Agreement contemplates no such obligation. Law and common sense have that in common. *See, e.g., Allied Supply Co. v. Brown*, 585 So. 2d 33, 35 (Ala. 1991) ("[I]t is not a violation of an employee's fiduciary duty to prepare to enter into competition with his employer without providing prior notice." (citation modified)); *Bolsa Res., Inc. v. Martin Res., Inc.*, No. 11–cv–01293–MSK–KMT, 2014 WL 4882132, at *8 (D. Colo. Aug. 28, 2014), *report and recommendation adopted sub nom. Bolsa Res., Inc. v. Salzburg Holdings, LLC*, 2014 WL 4980045 (D. Colo. Sept. 30, 2014) ("While a former employee may be contractually obligated to *avoid* disclosing confidential information relating to his former employer, there is no precedent for imposing a duty of *disclosure* on an employee to its former employer." (citation modified)); Restatement (Third) Of Agency § 8.04 (2006) ("In general, an employee or other agent who plans to compete with the principal does not have a duty to disclose this fact to the principal . . . . In this respect, the social benefits of furthering competition outweigh the principal's interest in full disclosure by its agents.").

## IV.    CONCLUSION

Consistent with the above analysis, Flexpak's Motion for Preliminary Injunction, ECF No. 14, is DENIED.

DATED this 29th day of January 2026.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge